Thank you. Before we begin today, for the record, the first case, Holmes v. Workers' Compensation Commission, Harris-Whiffing, you'll notice that there are four justices here, there will be five justices here in your case. Justice Richard Goldenhersh will be sitting in on this case. He has the benefit, the full benefit, of all of the briefs that have been filed. He'll have the full benefit of all of the oral argument. He'll be a fully participating member of this panel. He's just unable to be physically present here today. For the record, having been noted, please call the first case. 5-13-0-2-1-0, Brian Holmes v. Workers' Compensation Commission. Counsel, you may proceed. Good morning. May it please the Court, Mr. McManus. Your Honors, this case comes to you in the context of employer-provided transportation. The Court is well known, or knows well, the general rule that an injury occurring while on your way to work or coming back from work is not compensable, but there are exceptions. And the well-known exceptions are like the parking lot cases where perhaps you're nearly at work, you're still on your way to work, but you're in a designated parking area and so the injuries associated with perhaps walking through the parking lot are deemed compensable. Traveling employee is another kind of exception where a person may not be going to the same destination every day. Employer-provided transportation is an equally compelling exception. When the employer provides the transportation, controls the time, the route, the means of transportation, cases find compensability. Well, it's a nice general phrase, employer-provided transportation, but what does that mean? Does that mean that any time a co-worker drives somebody for convenience of the other co-worker to their job site, the employer's liable? No, because I think in your question you're saying a co-worker and convenience, and I think that that's a substantial distinction. In this case, the reason I think it's employer-provided transportation is that we're dealing with a superior and a subordinate. We have a boss who says to a subordinate, and that's undisputed. This is a boss and a subordinate relationship. A boss says, I'm going to pick you up tomorrow morning at 4.30 and does in fact pick up the subordinate at 4.30. But that's the end of the equation. The purpose for which this is being done doesn't matter? Well, it would have to be to go to work. And isn't that the Robbins case? The controversy, as I read the record, is what was the reason he was with Russell? Was it a personal convenience? I mean, sometimes people pick people up because they want to have some company. We can't exclude that. I mean, to me, you've got to focus in on what was the job-related purpose for this ride? Well, I think it's undisputed that the destination is work, because Monday's a work day. The start of work is 5 a.m. At 5 a.m., when these two men didn't show up because they were hit by a train, the boss and co-workers were calling these two people saying, where are you? And that's undisputed. There is no evidence that they were going to breakfast. There is no evidence that they were doing it for company's sake. But I would ask the Court to consider this, specifically to your question, Justice Hudson. What if it's just for company? A couple of weeks ago, I worked through the lunch hour because I was in a courthouse a couple of counties away. And when I got back to my office, it was 1.30. I wanted to go have lunch. I went to my associate and I said, come have lunch with me. And he said, I've already eaten. And I said, I need company. Come with me. Well, I'm his boss. I probably wouldn't have done that to my law partner, but I did it to my associate. And my guess is, is my associate, who's already eaten, says, you're the boss. And so I think when, you know, the essence of arising out of and in the course of a lot of times it has to do with control. And certainly in this instance, there's some more compelling facts of control than there is in a parking lot case. There's certainly more compelling facts of control, like if you're playing a softball game and you sprain your ankle on a softball game. So any time the boss asks the associate to go somewhere with him, the employer is liable. It seems to be, I'm having trouble separating this from the issue that it has to be to do some work-related purpose to the travel. Because as undisputed and clear as you think this case is, the commission obviously didn't agree with your position. Well, keep in mind that sort of the crux of what gets the case here is that the commission made a decision without considering all the evidence because the arbitrator excluded the conversation that took place the day before this accident. And that's really the crux. That's what gets us here. Because the key to success for you in arbitration for your client would have been for Ms. Holmes' testimony that was excluded to have been considered. Right. So that's the starting point here. And if I understand you correctly, the circuit court erred in suggesting that it could look past that evidentiary ruling and say, and it said that even considering that excluded testimony, it would find that the decision of the commission was not against the manifest weight of the evidence. And you're saying you can't do that if it was an improper exclusion of evidence. It has to go back to the commission for the commission to make that decision. Is that right? I think that's a precise summary of my argument. I do think the arbitrator and the commission got the Dead Man's Act exclusion wrong, the hearsay exclusion wrong. What about the hearsay part of it then? Well, I think the boss, Jimmy Russell, the one who picked up Brian Holmes, was in fact an agent of the respondent. It's not hearsay if there's an agency relationship and the conversation has to do with work. And it has to do with the scope of work. Well, what is being said of the conversation? Amber says, boss came to our house on Sunday afternoon, the day before the Monday morning shift, and said, hey, be ready. I'm going to come pick you up at 430. And that testimony, it's in the record because of an offer of proof, but there was an objection to the Dead Man's Act, which doesn't apply because no one is suing or defending on behalf of an estate in this case. And it's not hearsay because if you're an agent and if the conversation has to do with the scope of the agency, which is work, well, then it's not hearsay. I really think if you look closely at the record, the arbitrator was really caught up on the Dead Man's issue. I mean, we went back and forth on that throughout that trial. And it's a non-party that we're talking about. So let's put the Dead Man's Act aside here and just concentrate on the hearsay. Yeah, I just think there are Illinois rules of evidence. If you look at the elements, 801D2, I think, and you look at the elements of when it's not hearsay, is there an agency between the respondent and Jimmy Russell, the foreman? Yes. Is the conversation something within the scope of that agency? Well, they're talking about going to work, so that's certainly in the scope. And so I think those elements then make it not hearsay. Now, I do want to point out that what the owner of the company says is, I didn't authorize nor did I ask Jimmy Russell to take Brian Holmes to work that day. And they seem to suggest, well, that makes it hearsay, except from the concept of Brian Holmes, there's no evidence that the boss told Brian Holmes, hey, if your foreman tells you he's going to come pick you up at work, don't listen to him, he doesn't have the authority to do that. I mean, that's not in the record. So it's almost like an apparent agency thing. What is Brian Holmes to do? Brian Holmes has a boss who says, I'm picking you up at 430. Do we really think he could have said, you know, to heck with you? No. The evidence is he had his own way to work that day, didn't need a ride, would have left later in the morning. So the boss picks the time, picks the route, and drives himself into a train. So, you know, Brian Holmes, the question is when you're dealing with a subordinate, can you say no? I just don't think you can say no. Well, before you get to that, when you're talking about the admissibility of a statement, more particularly, is it hearsay or not, could you go a little bit further into what is necessary to allow such a statement in, in terms of the authority of the agent to make the statement that he has made, and here, whether or not this fellow was authorized to, Russell was authorized to make the statement that he made. 801D2 says a statement is not hearsay if the statement is offered against a party, which it was, and D, a statement by the party's agent or servants concerning a matter within the scope of agency or employment, transportation to work, I think fits that category, made during the existence of the relationship. Okay, so what evidence is there? Or what was presented to the arbitrator that Russell was authorized to provide such transportation? Well, it had been done before. The owner of the company testified that he knew that Jimmy Russell had, in fact, taken, picked up employees and taken them to work. So he knew it happened and he didn't prevent it. By circumstantial evidence, the person who replaced Jimmy Russell after his death, Paul Hoss, he testified in this case and he admitted that in his role as foreman replacing Jimmy Russell, he sometimes picks up employees that need rides to work. And he said, and I asked, well, why do you do that? Well, because they're good employees. They're good workers. And so you have a foreman going and getting people because they're needed for the job. That's employer-provided transportation. Whether it's because of a DUI or convenience, there's still some element benefiting the employee. But the new supervisor, okay, what is the relationship between the owner, Harris Riffing, and that supervisor? What's that knowledge? What's that approval? The parent authority. The last section you read there. Because we're talking about that relationship. Well, the existence of the relationship. There was not a prohibition by the employer for the foreman to bring workers to work. Now, what he said is, I didn't ask him to do it. Okay. Well, if sometimes you can't think of the word. It's not acquiesce. But if you eventually, if you accept certain conduct in the past, that implies acceptance or it implies authority. So if the foreman picks up the subordinate in the past, once a month or twice a month in the last six months, and the boss knows it, which the owner testified he knew it had happened before and he didn't prohibit it, he didn't say don't do that. So given that it had happened before, I think you can infer from those circumstances an implied authority. Okay. Because that's the real issue here, I say, more than talking about, well, can he say no to his supervisor, et cetera. I think you have to have that link there, don't you? Well, it's one of the elements. It certainly is. Now, there is evidence where the owner says I didn't ask him to do it. So that's evidence. But the question is, is that a prohibition? Is the only way that that relationship exists when there is a prohibition? I think you have to have a prohibition because you have to consider the relationship that goes on between the foreman and the subordinate, which is I'm going to pick you up. Unless the subordinate knows that he can say no or the boss doesn't like this, then I think you have to give the evidence ways in favor of authority. You make a very logical point, I would concede. In the real world, if somebody's boss supervisor tells them I'm going to pick you up and go to the job site in the morning, nobody's going to refuse. I have no trouble conceding that. What about if the supervisor says I want to pick you up and let's go to breakfast. I just want to talk to you. Now, according to those elements, it's the boss, it's the employer, it doesn't say no, the employer knows about this in the future or in the past practices. You would say liability automatically attaches under some employer-supervisor provided transportation. They just want to go to breakfast. How does that fit into your rule? I would say that I don't like black and white. And I wouldn't say that you would make a bright line rule if it's because I think there are lots of elements about how personal the trip is. And I think you would have to take that on a case-by-case basis. I don't think you would ever make a hard and fast rule that if it's to go to breakfast and it's your boss, it's compensable. Well, that's the problem I'm having here. As far as Harris testified, the claimant would only perform a work-related project if he had specifically instructed them to do so. He didn't know why they would do that. So, again, I'm looking for the evidence that tips the scales in favor of they were going to do some work. This was connected to work, this ride, other than merely I want to give you a ride to work. Well, consider the excluded evidence. Right. Okay. So you would include that. So we did. And you include all the other circumstantial evidence weighed against the absence of any hard fact that they're going to Denny's. If some of the excluded evidence were allowed in, you still have a credibility problem with Mrs. Holmes on this issue, don't you? She testified that she knew that he left with Russell, but when Harris told her there had been an accident, she asked him was he on his motorcycle. He would have been on his motorcycle if he was with Russell. Well, I think there's a credibility issue there, but there's also a credibility issue in whether that statement was made by Harris. I mean, your question, you imply that one is truthful and the other is doubtful. But there is evidence of lack of credibility on her part. So we've got a credibility problem one way or another if the testimony were permitted in. Right. But if you're going to let it in, then what do you do? Does this court send it all the way back to the commission for the fiction? And it is a fiction. I mean, weighing credibility on the transcript by the commission is a fiction because they're not watching it. We understand it's a fiction, but it's a fiction the Supreme Court says we must involve. I get it, but I'm just saying as a practical matter, that's why I talked about 366. I think this court can do as well as the commission. I think if this court considers all the evidence, it can find employer-provided transportation. I'm not saying it has to. It can send it back to the commission, but the commission never did weigh the evidence. Counsel, your time is up. Thank you. You'll have time in reply. Hey, please, the court. I think part of the understanding of this whole case is that opposing counsel is taking essentially half of the story. You're not looking at the big picture, which I think is incumbent upon anybody who's trying the case or looking at the evidence. They would want you to believe that this supervisor, Jimmy Russell, came to the petitioner and said, you're going with me tomorrow morning. They failed to take into account the other evidence leading up to this time period. The evidence is the day before, the same pair, Jimmy Russell and Mr. Holmes, were riding together. No indication that there was any special type of work that had to be done. They did do a project together. Mr. Haas, who became the supervisor later, was there as well. There's testimony that after that original job on that Sunday, they came back to the owner's house, which is always kind of the starting point and the ending point for a job. They came back to Mr. Harris' place. They picked up some furniture for Mr. Russell and drove on. And the other testimony in this case is that ever since Mr. Holmes had gotten a motorcycle about a month earlier, people were giving him rides, especially on days where it looked like it was going to be rainy or other issues. So they're basically asking, do you not believe that there were any discussions about Mr. Holmes asking for a ride, you know, that afternoon or that day before? Basically saying, oh, all we heard was the supervisor saying, I'll pick you up at 4.30. You know, disregarding what had gone on before. I think that's a key in this case. It's not just a supervisor going, hey, I'm going to pick you up. Be ready. We're going. Is there any evidence in the record that the claimant was unaccustomed to riding with Russell unless Russell required his assistance in some work-related project early on? The only evidence that came in was the owner, Mr. Harris, saying, I never told him to go out and pick him up to do some kind of special errand or job before meeting at the owner's house that morning. Now, if the offer of proof were to come in, even the wife doesn't talk about some type of special errand they were going to do. She says, in general, yeah, Mr. Russell would pick him up when they had stuff to do, but I don't know what they were going to do in this case. I can't tell you what they ever did special in the past. All I know is I heard him say he was going to pick him up at 4.30, as if it was an order. Now, the other thing I'm glad he pointed out was the credibility. She says that if he had gone on his own, her husband had gone on his own that morning, he would have left at 5 o'clock. But they all agreed work started at 5 o'clock, so that doesn't even add up. He's not going to leave his house at 5 o'clock if the starting point is 5 o'clock. Just getting aside from that for a second, what do you make of opposing counsel's argument? He cites to this employer-provided transportation principle as it bears on compensability. So how do you respond to that argument? Well, one, I think he first tried to fit it in as a special errand. When that wasn't going, the facts weren't going that way. Then it's, well, we need to create a new exception. And this new exception is this can't be co-employee ride. It's got to be supervisor co-employee ride. Again, indicating that there's some amount of control or order to that subordinate. But I think if you look at that, and I think you all touched on this, you're going to go down a slippery slope. You're going to have to decide, well, is this a true work order to go with them? Are we going to have to factor in how much friendship there is between these two employees with one being controlling and one being subordinate? Is there a rule in your mind that any time, for whatever reason, a supervisor asks a subordinate to take a ride with them on the way to work, is that automatically in and of itself established liability? No, no. Clearly you're going to have to go down again. There has to be some testimony about the purpose of this, correct? Right. And you're lacking completely in that, even if you add in the evidence that was excluded. That still doesn't get them to where they're going, which goes back to why I think you heard Mr. Stone talk about how the commission didn't consider the facts, and that's not right, but then when the circuit judge did consider all the facts, well, that's not right either. Which way is it? I think what the circuit judge did was it promotes judicial efficiency, judicial economy. He said even taking into account that excluded evidence, I still don't think you've met your burden of proof. But that wasn't his right to do. That's the commission's right to do. He only gets to review their decision once they make it on a manifest way. He doesn't get to do it to nobody. He can't say, if this would have been, you didn't meet the burden. That's the commission's job. Now, to that extent, he was wrong. But the question becomes, it's a greater question, and that is, is the commission's decision against manifest way of the evidence, and should that testimony have been admitted? And so that leads us to the next part. Let's talk about the hearsay in the Dead Man's Act and so forth. It's only got to be one objection that he was right on, the arbitrator in this case. I wouldn't rely too much on the Dead Man's Act. What about the hearsay? That's exactly what I was going to say. Let's just talk about the hearsay to start with. You know, opposing counsel was clear in talking about not being hearsay. It goes into it's, you know, hard admission against interest, essentially. But he kind of glosses over the whole, in the scope of the employment. And one, let's take a look at when this statement was allegedly made. A Sunday evening, it's not a work time. It's completely outside of anything they would have been doing for work. In fact, at that time, supposedly Mr. Holmes had helped Mr. Russell move some furniture, completely unrelated to work. And he said, it's enough just to say, hey, I'll pick you up. Again, remembering that it's not just an order. He's not saying, you have to go with me at this time. It's more likely a response to a request to take him to work. So I don't think you can just say by saying, okay, I'll pick you up at a certain time, that that actually is within the scope of employment. Well, is that what the offer of proof was? Just simply, I'm going to pick you up? Or was it, I'm going to pick you up because I need help with something at work? No. The offer of proof was that the wife, Amber Holmes, had said, I heard Mr. Russell say, I will pick you up at 430. And nothing about needing help to do something at work? The farthest you can get with that is she had said that in the past, whenever he had offered to pick them up, they would do something. Now, when questioned on, or when discussed what they would do, she didn't know. What they were going to do that specific day, she didn't know. It was a blank, it was kind of a general statement that she made. But, again, if you compare that with the supervisor, Mr. Haas, and Mr. Harris, the owner of the company, it's clear they didn't have anything else to do. I mean, take a look at, they were at a time when they would have probably been leaving and going to the owner's house. They would have gotten there a little bit before 5. Part of the job is everybody puts the tools together in a truck, and then they leave from there, they go to the gas station, and then they go to the gas station to the job site. So if they were going to work, they were going to work to do the same thing that all the other employees did. Or their normal commute to the supervisor's house that they did every day. Right. They were on the normal path at a normal time that they would have been there for that. And what happens is, again, this was originally tried more for a special errand. And when that was falling through, it became this, well, let's move to a supervisor has control over employee, and that's the new exception that we're going to have. And so in going back to the hearsay, just to address that for a second, I don't think it's enough to say that I told him I would pick him up at a certain time that fits within the scope of the employment. I think you have to be talking about the employment in detail, things that were going on, things that you had to do at the time of the employment. Because if you look at the big picture, both for the Dead Man's Act and the hearsay, the whole idea of the spirit of the law is that you can't just put someone who is going to be self-serving on what the deceased says without any cross-examination of the deceased. So for her to say all this stuff that she heard someone say is going to come into evidence, basically makes it unfair when you're going to talk about what the actual evidence is in the case. There's no true ability to cross-examine that individual. The other thing I would point out in this case, as Jessica Hoffman pointed out, was the credibility issue still. Ms. Holmes' statements, which she did testify, as well as what the offer of proof was, were filled with inconsistencies. Again, I talked about she said that he would normally leave at 5 o'clock. Well, that doesn't make sense because they were supposed to start at 5 o'clock. The point where she says that she saw her husband leave with Mr. Russell, again, doesn't make sense because Mr. Hoffman testified. I raised it to your point, but I don't want to free up this argument, but he is going to respond and say that's for the commission to decide. That credibility is a commission decision. It's not our decision to make. So the real issue is, was it properly excluded? The answer to the question is it was improperly excluded on both grounds. Then the question becomes, is it within the province of the commission to make the credibility determination and not us? If it's sustainable on either ground, you're right. It's ours. The commission has made its decision without the evidence. Right, and even if you get to that point, when you talk about the manifest way to the evidence, you're still talking about judging credibility issues as well. That's why I bring it up. I say the evidence should be excluded first and foremost because it was hearsay, but if not, I still say it's against the manifest way to the evidence because when you take into totality, again, the evidence filled with her inconsistencies, it still would be a case that they would have found on a manifest way to the evidence argument. I don't want to waste any more time even though I have it, so if you have any questions, I'll answer them otherwise. Thank you. I don't believe I do. Thank you. Thank you. Do I have a few minutes left? Yes, you do. Thank you. You have five minutes. Thank you. And then you're quiet. The record will show it, but when you read Amber's testimony with regard to what Jimmy Russell said, there's two things that are said. He said that he needed some help with work. The cross-examination was, well, what at work? In other words, what specific, precise detail at work, once they got to work, were they going to do? Is it relevant? She didn't know. Is it even relevant? Well, it's relevant in relationship to the questions. Well, the question was, or the answer was, he needed help at work. Does it make really any difference if that's true, that he was going to be taken to help at work, what exactly he was going to do when he got there? I mean, help at work is work. I think that's the point I'm trying to make. Well, I mean, that's my point. It doesn't really make any difference what he was doing. And so the fact that she didn't know is rather irrelevant anyway. Right. I agree with that, and that's the point I'm trying to make, because I think the argument of counsel was she didn't know what they were going to do. So I agree with the justice. I'm troubled by, because this came up before, where a respondent says that, you know, initially this was a special errand case. And I don't – special errand comes up one time in the arbitrator's decision. You all know that we do propose decisions, but they don't get into the record. My proposed decision was not on special errand. It was on employer-provided transportation at every level. So I don't know what – special errand was something that the arbitrator brought out of whole cloth. He says he's on his way to work, it's not compensable, and there's not evidence of special errand. Well, there's not evidence that this is a parking lot case either. There's not evidence that this is a traveling employee case. The exception that we were driving at all the time was employer-provided transportation. Justice Hudson, I don't think this case should serve as precedent for every time a superior and a subordinate take a ride together that there is compensability. And nor do I think the fear of that should keep us from looking specifically just at the facts of the individual case. When there is employer-provided transportation, when there is a superior-subordinate relationship, and when that relationship has something to do with work, something to do with work, then there's compensability. Well, okay, let's take that case. I mean, we're given a black-letter rule there that says, okay, when you have a case like this, this is what we need to establish or this is what we need to refute. What in this case is there? Because a moment ago in your policy with Justice Hudson, you said, oh, all we need to do is say, I need help at work. Is that sufficient? As long as it's work. In other words, do I need help loading the hammers and the gas-powered guns, you know? Is that what I needed help with? Well, no. I mean, you don't have to be that specific. We know this. But we do know this. We do know that at work, at the end of the job, they're at Harris' home, the owner's home, and Holmes is loading up furniture with Russell, has no relationship to work. The day before. Right. That's true. So at work can mean many different things. At work, I want you to help me paint my car. Okay. But I'm not – I agree with that, Your Honor. And if they were – if Russell ran himself into a train on his way, taking home the patio furniture that Boss Harris gave to him as a gift, I think under those circumstances I probably wouldn't be making this argument. But this is a Monday, the beginning of a work week. At the beginning of the work week, you can imagine how much prep work has to be done to load the trucks for the beginning of the week. And that's what – I think it's undeniable that's what they were doing. So who's going to make the decision if all we have is I need help at work? Okay? And the commission says not in the scope of, didn't arise out of. Well, if they make that decision, if they take the evidence into account, you mean? Yes. Well, then they make the decision. Okay. So we would find in the record that the day before or the week before, while at work there was a lot of personal stuff going on. And so they could say, nope, no recovery. They could. And they did. Well, I'm not sure they did because I don't think they considered all the other evidence. I mean, they didn't consider the evidence that it was excluded. I think that's why. I just threw it in. And that's why I think the automatic rule, I wouldn't be fearful of it, because you could have a relationship on Sunday that involves patio furniture that would not be compensable. But just because that happened on Sunday doesn't mean Monday morning wasn't work-related. That's why you can't have a broad rule. Well, that's true, too. But that's what I was looking for in the employee benefit here. I think we agree. You can't have a broad rule. And I thought that's what you were arguing for because you kept throwing out the phrase employer-provided transportation. Like any time you jump into a car with a supervisor, the employer is liable. So now you've clarified the position that was not what you were advocating. That's true. Counselor, I see your time is up. Thank you, Counsel, both for your arguments. And this matter this morning will be taken under advisement. This position shall issue. The court will stand in brief recess.